UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DJOACHIM M. LOCKHART,

    Plaintiff,

v.                                                                     Hon. Paul L. Maloney

JUDE'S BARBERSHOP INC.,                    Case No. 1:22-cv-1078

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Djoachim M. Lockhart filed this action on November 17, 2022, against his former employer, Jude's Barbershop Inc. His complaint, titled "Charge of Discrimination and Wrongful Termination," alleges claims of hostile work environment and discrimination under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 (ADEA), the Americans with Disabilities Act of 1990 (ADA), and the Michigan Elliott-Larsen Civil Rights Act (ELCRA). Plaintiff also mentions the Fair Labor Standards Act (FLSA) and cites a Michigan statute, Mich. Comp. Laws § 423.210, which prohibits certain conduct by public employers and labor organizations. Finally, Plaintiff alleges a state-law claim of wrongful termination.

    Having granted Plaintiff's motion to proceed as a pauper (ECF No. 4), I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, or fails to state a claim upon which relief can be granted. Based on this review, I conclude that Plaintiff's complaint must be dismissed because it fails to state a federal claim upon which relief may be granted. To the extent that Plaintiff alleges state-law claims, I

recommend that they be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) because Plaintiff has not alleged facts supporting diversity jurisdiction.

## I. Background

Plaintiff is a 50-year-old black male. He began working at Defendant Jude's Barbershop as a barber sometime prior to February 22, 2022. Plaintiff alleges that at some point during his employment with Defendant, he learned from Assistant Manager Sky Hornbeck that Manager Nikki Joseph had instructed Hornbeck and David Cantu, a coworker, to "keep tabs" on Plaintiff while he was at work by texting Joseph reports of what he was discussing with clients. These topics included Plaintiff's worker's compensation claim against Meijer Companies Ltd and his effort to educate clients about life and health insurance. Plaintiff alleges that no other employee was subjected to this treatment. (ECF No. 1 at PageID.2.)

Plaintiff also alleges that an employee may be written up if a client returns to the barbershop because of an unsatisfactory haircut. He alleges that Danielle, a new employee, consistently gave bad haircuts but was never written up. In contrast, Plaintiff received one write-up, even though he had advised the client ahead of time that his hair type might not support the particular hairstyle he desired. (*Id.*)

Before Defendant hired Plaintiff, Defendant sent Plaintiff an advertisement indicating that new employees were eligible for a sign-on bonus of "up to $1,500." (*Id.*; ECF No. 1-1.) Plaintiff alleges that the criteria for receiving the bonus were unclear, and Defendant never paid him any amount as a sign-on bonus, even though he had more than 20 years of experience in the haircare industry. Plaintiff believes that Defendant's failure to pay him the bonus was due to discrimination and its unsavory business practices. (ECF No. 1 at PageID.3.)

Defendant terminated Plaintiff's employment on February 25, 2022. Plaintiff believes that his termination was due to his participation in a mediation hearing conference call in his worker's compensation case on February 22, 2022, while he was servicing a client. Defendant's upper management told Plaintiff that he was terminated because he was talking with his attorney. (*Id.*)

## II. Discussion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the

>court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Because Plaintiff is proceeding pro se, the Court must construe his pleading more liberally than is usually the case for formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf" *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### A.   Federal Claims

#### 1.   Title VII

Plaintiff alleges that Defendant discriminated against him and subjected him to a hostile work environment in violation of Title VII.

Pursuant to Title VII, an employer is prohibited from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff is not required to allege an indirect-evidence prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework at the motion to dismiss stage. *Keys v. Humana, Inc.*, 684 F.3d 605, 606 (6th Cir. 2012). Nonetheless, a plaintiff alleging race discrimination is still required to "allege sufficient factual content to make a claim for relief plausible." *Blick v. Ann*

4

*Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 722 (E.D. Mich. 2021). In other words, a plaintiff must allege enough facts to allow the court to infer that the plaintiff suffered the alleged adverse employment action because of his race. *See Wiseman v. Spectrum Healthcare Res.*, No. 2:21-cv-02042, 2021 WL 4399718, at *3 (W.D. Tenn. Sept. 27, 2021) (quoting *Flynn v. Memphis Pathology Lab'y (AEL)*, No. 2:19-2882-CV-SHL-TMP, 2020 WL 5801087, at *3 (W.D. Tenn. Sept. 29, 2020)).

An adverse employment action is "a materially adverse change in the terms and conditions of a plaintiff's employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). In the context of a discrimination claim, an adverse employment action usually requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiff's termination was an adverse employment action. Yet, Plaintiff does not allege that it occurred because of his race, or any other characteristic covered by Title VII. Instead, he says that he was terminated because he participated in a telephone mediation session for his worker's compensation case and/or was talking to his attorney while he was servicing a client. Plaintiff thus fails to allege sufficient facts to give rise to a plausible inference that he was terminated because of his race. The single write-up that Plaintiff received does not amount to a materially adverse employment action because there is no indication that it effected a change in the terms and conditions of Plaintiff's employment. *See Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 823 (M.D. Tenn. 2011) (concluding that the plaintiff's receipt of a written disciplinary write up did not constitute an adverse employment action because it did not result in any job consequences). Finally, with regard to non-payment of

5

the sign-on bonus, Plaintiff alleges no fact creating a plausible inference that he Defendant's failure or refusal to pay Plaintiff the bonus had anything to do with his race.

Plaintiff also alleges that he was subjected to hostile work environment discrimination under Title VII. To state a claim for hostile work environment discrimination under Title VII, a plaintiff must allege that: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment created a hostile work environment; and (5) employer liability. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). Moreover, to allege plausibly a hostile work environment claim, the alleged discrimination must be severe or pervasive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). Plaintiff fails plausibly to allege that he was subjected to a hostile work environment because of his race or other protected characteristic and that such discrimination was severe or pervasive. Plaintiff alleges that he was given one write-up and that Defendant's staff "kep[t] tabs" on him because of the topics he discussed with his clients. Moreover, as to the "keep[ing] tabs" allegation, Plaintiff admits that Joseph's concern was animated not by Plaintiff's race, but by the topics Plaintiff was discussing with clients while he was at work. (ECF No. 1 at PageID.2.) In short, Plaintiff's allegations do not plausibly show that any alleged harassment was race-based or was "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Id.*

### 2. ADEA and ADA

Plaintiff cites the ADEA and the ADA in his complaint but alleges no fact supporting a claim for age or disability discrimination or harassment. To the extent that he intends to assert such claims, they fail for the reasons set forth above. In addition, as to any ADA claim, Plaintiff does not allege that he is disabled under the ADA, which defines disability as "(A) a physical or mental

6

impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Accordingly, Plaintiff fails to state a claim under these statutes.

### 3. FLSA

In connection with Defendant's failure to pay Plaintiff a sign-on bonus, Plaintiff cites a U.S. Department of Labor Wage and Hour Division fact sheet titled "Bonuses under the Fair Labor Standards Act (FLSA)." (ECF No. 1 at PageID.4.) Plaintiff alleges no fact indicating how Defendant's failure to pay the sign-on bonus violated the FLSA. "The FLSA requires . . . employers to pay employees engaged in commerce a wage consistent with the minimum wage established by the Act, and 'provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate of not less than one-and-one half times their regular pay.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing 29 U.S.C. § 207(a)(1) and quoting *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009); internal citation omitted). For example, Plaintiff does not allege that Defendant's failure to pay him the bonus resulted in Plaintiff being paid less than the minimum hourly wage established under the FLSA or not being paid overtime compensation at one-and-one half times his regular pay for overtime work. To establish an FLSA violation, Plaintiff must do more than simply cite a Wage and Hour fact sheet and leave it to the Court to discern his claim.

Therefore, Plaintiff also fails to state a plausible FLSA claim.

### B. State-Law Claims

Plaintiff also appears to allege state-law claims for violation of ELCRA, as well as for wrongful termination, and possibly breach of contract for failure to pay the sign-on bonus. Because

Plaintiff has not alleged a basis for diversity jurisdiction under 28 U.S.C. § 1332(a) his claims are based on supplemental jurisdiction under 28 U.S.C. § 1367.

If the Court agrees with the foregoing recommendation, I further recommend that it exercise its discretion to decline supplemental jurisdiction and dismiss the state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Generally, the Court should decline to hear state-law claims when all federal claims are dismissed before trial. *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (citing *Carnegie–Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the litigation was just commenced, and Plaintiff may properly pursue his remaining claims in state court. *See Kelly v. City of New Philadelphia*, No. 5:20-cv-211, 2020 WL 2126665, at *3 (N.D. Ohio May 5, 2020) (declining to exercise supplemental jurisdiction where all of the federal claims were dismissed "at this early stage of litigation").

### III. Conclusion

For the foregoing reasons, I recommend that Plaintiff's federal claims be **dismissed** for failure to state a claim and that his state-law claims be **dismissed without prejudice**. The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and

recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date:  December 5, 2022 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation (including any argument that leave to amend should be granted) must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).